UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| TIRON C. BELL, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. 18-CV-50410 |
| vs. | ) ) |
| COMCAST CORPORATION, | ) ) **JURY DEMANDED** |
| Defendant. | ) |

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff, TIRON C. BELL by and through his attorneys, BARRICK, SWITZER, LONG, BALSLEY & VAN EVERA, and for his Complaint against the Defendant, COMCAST CORPORATION, states as follows:

### Preliminary Statement

1. This is an action for discrimination under Title VII and the Americans with Disabilities Act in regards to Comcast Corporation's failure to accommodate Tiron C. Bell's disability and employment discrimination based on race and color.

### Parties

2. Tiron C. Bell ("Bell") is an individual residing in Winnebago County, Illinois.

3. Comcast Corporation ("Comcast") is a corporation with its principal office located at 1701 JFK Boulevard, Philadelphia, PA 19103, and has over 500 employees.

4. Comcast regularly conducts business and has employees in Rockford, Illinois.

5. The claims asserted herein arise from Plaintiff's employment with Defendant in Rockford, Illinois.

**Jurisdiction**

6. This Court has original jurisdiction over this case as this Complaint is predicated on violation of Title VIII of the Civil Rights Act of 1964 and the American with Disabilities Act of 1990.

7. Bell filed an EEOC Complaint regarding violations of Title VII/ADA on August 23, 2018, and subsequently received a 90-day notice of Right to Sue on or about September 28, 2018, thereby making this filed Complaint appropriate and timely.

**Venue**

8. Venue is proper in this Court under 28 U.S.C. 1391(b)(2) as a substantial part of the events giving rise to the claims asserted herein occurred in the Northern District of Illinois.

**Facts Common to all Counts**

9. The claims alleged in this Complaint arise from Bell's employment with Comcast.

10. On or about May 28, 2013, Bell, an African American black male, began employment with Comcast as a sale representative.

11. As a part of those employment duties, Bell was required to go door-to-door to conduct sales of Comcast's offered services.

12. However, Bell was previously diagnosed with multiple sclerosis disease ("MS"), which caused him to be debilitated, particularly to his hips and legs.

13. As a result of Bell's disability, he took a 6-month approved leave of absence from Comcast, in 2014, in ordered to rehabilitate and accustom himself to his limitations from MS.

14. However, due to Bell's ongoing limitations form MS, he was required to take another 10 months leave of absence, which was approved. However, 3-4 months of this leave of absence was without pay.

15. Bell eventually returned back to his employment duties and was 12th in the region for sales out of 144 sales representatives in 2017. Bell did subsequently did take a brief leave of absence again due to his disability.

16. In January of 2018, Bell's manager, Travis Nelson, was terminated from his employment from Comcast and Riley Kromeich ("Kromeich") was promoted to interim manager.

17. Additionally, in January of 2018, Bell was required to recertify his disability accommodations with Comcast after attempting to return to work.

18. Bell subsequently advised his new manager, Kromeich, on or about January of 2018, of the issues/limitations with his legs, to which Kromeich advised Bell that he could not return to his job without medical approval, and that he could not work at Comcast if he could not do his job.

19. Bell then informed Ruth Miller of Human Resources regarding this conversation, who informed Bell that there was no decision made about his return to work at Comcast yet, but he was not being terminated. Kromeich subsequently learned of this communication and emailed Bell that he should have known better.

20. Bell then informed Human Resources regarding Kromeich's unprofessional behavior, at which time his disability became of heighted focus.

21. Bell was informed by Human Resources that Comcast would need more specificity regarding his limitations before returning to work, despite Bell previously providing Comcast with the proper documentation regarding his disability from his physician. Comcast then obtained its own physicians to evaluate Bell.

22. Physicians for Comcast and Bell's physician then began to dispute each other recommendations for the accommodations needed for Bell, and his limitations, despite Comcast

never disputing Bell's disability and accommodations/leave of absences needed until 2018. Comcast physicians also never actually evaluated Bell.

23. Human Resources continued to question Bell about his MS, requesting he provide them with more specificity regarding his limitations and to help them "understand" his condition, even though this was previously fully explained by Bell.

24. Human Resources finally agreed to allow Bell to come back to work and the accommodations needed, pending documentation from his physician, which was provided. Bell subsequently returned to work on or about May 15, 2018.

25. Bell requested that his manager not be Kromeich, however, due to the previous complaint he had made against her with Human Resources, and Kromeich's unprofessional behavior toward him. Bell was then informed by Comcast that his manager would be Alex Sardo.

26. On or June 12, 2018, Human Resources reprimanded Bell due to his alleged action in a telephonic conference with Kromeich and other sale representatives, which occurred on May 23, 2018. Bell was informed by Human Resources he was being reprimanded because he was "talking like a slave" during the meeting. Bell had no knowledge as to what Human Resources was referring to.

27. Bell also informed Human Resources he is still being continued to report to Kromeich, even though he was under the belief his manager was Alex Sardo.

28. Bell was subsequently terminated by Comcast on or about June 22, 2018, for alleged conduct during the May 23, 2018 meeting, not wanting to report to Kromeich, and being repeatedly late to meetings.

4

29. Bells refutes these allegations believes that based on the conduct of Kromeich and Comcast, and the facts presented, that Comcast was terminating Bell based on not wanting to continue to accommodate his limitations and MS, and based on racial discrimination.

30. Bell also learned that a week after he was terminated, Kromeich was also terminated. A co-worker of Bell informed him that when Kromeich was terminated, she stated that she got what she needed to get done and got TC (Bell) fired.

### COUNT I: Violation of Title VII

31. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-30 of the Complaint and incorporates those allegations as if fully set forth herein.

32. Under Title VII, it is unlawful for an employer to discriminate against an individual in respect to his race or color.

33. That based on the Comcast's actions in this matter and terminating Bell, in-part, for "talking like a slave", there has been a clear violation of Title VII and unlawful discrimination against Bell based on his race and color.

WHEREFORE, Plaintiff, TIRON C. BELL, respectfully requests this Honorable Court enter an Order awarding Plaintiff up to $300,000.00 in compensatory damages, ongoing front-pay, and punitive damages based on Defendant's malice or reckless indifference.

### COUNT II: Violation of American of Disabilities Act

34. Plaintiff restates and re-alleges the allegations contained in paragraphs 1-30 of the Complaint and incorporates those allegations as if fully set forth herein.

35. That Bell had a diagnosed disease (MS) which caused him severe disabilities and required appropriate accommodations for him based on his degenerative condition and issues with his legs/hips.

36. That Title I of the ADA requires employers to provide reasonable accommodations to employees with disabilities.

37. That Comcast had never disputed Bell's need for accommodations and/or leave of absences, throughout the pendency of his employment, until January of 2018.

38. That such accommodations would not have created a safety hazard or undue hardship upon Comcast based on Bell's excellent performance in sales with Comcast.

WHEREFORE, Plaintiff, TIRON C. BELL, respectfully requests this Honorable Court enter an Order awarding Plaintiff up to $300,000.00 in compensatory damages, ongoing front-pay, and punitive damages based on Defendant's malice or reckless indifference.

## JURY DEMAND

Plaintiffs, TIRON C. BELL, hereby requests a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

TIRON C. BELL, PLAINTIFF

By: /s/ Jason H. Rock
      Jason H. Rock

JASON H. ROCK (6225946)
ATTORNEY FOR PLAINTIFF
Barrick Switzer Long Balsley & Van Evera, LLP
6833 Stalter Drive
Rockford, IL, 61108
815-962-6611